# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Miguel A. Estrada
Direct: 202.955.8257
Fax: 202.530.9616
MEstrada@gibsondunn.com

October 27, 2010

The Honorable Jed S. Rakoff
The Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *23–94th Street Grocery Corp., et al. v. New York City Board of Health, et al.*, 10-cv-4392 (JSR):  Requested briefing regarding the term "promotion" in 15 U.S.C. § 1334

Dear Judge Rakoff:

At oral argument, the Court requested a letter brief addressing the issue posed by the word "promotion" in the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 *et seq.* (the "Labeling Act"). As an initial matter, Plaintiffs' preemption argument does not depend on the Court's analysis of the word "promotion." For the many reasons explained in prior briefing and argument before the Court, the Resolution is "with respect to the advertising . . . of . . . cigarettes."

The Resolution also is "with respect to the . . . promotion of . . . cigarettes" (15 U.S.C. § 1334(b)) because it expressly references and mandates that retailers using the "large sign" post it at "each location where tobacco products are *displayed*." Resolution § 181.19(c)(2) (emphasis added); *see also* Notice of Adoption at 4 (requiring posting of "larger signage near tobacco displays"). Whatever the outer limits of the term "promotion," displays of tobacco products at retail outlets clearly are part of the "promotion" of cigarettes. Plaintiffs addressed this issue at pages 5 through 6 and 11 of their September 24, 2010, Joint Memorandum [Doc. 52] ("Reply Brief").

The most thorough judicial interpretation of the meaning of the word "promotion" in the Labeling Act occurred in *Jones v. Vilsack*, 272 F.3d 1030 (8th Cir. 2001). The *Jones* court recognized that the plain meaning of "promotion" is "the act of furthering the growth or development of something; *especially*: the furtherance of the acceptance and sale of merchandise through advertising, publicity, or discounting." *Id.* at 1036 (internal citation and quotations omitted). To add specific context to the term "promotion," the Eighth Circuit turned to descriptions of cigarette promotional activity by the Federal Trade Commission and the United States Surgeon General. The Eighth Circuit explained that Surgeon General Reports "historically have provided the political and scientific impetus to enact and amend the [Labeling Act]." *Jones*, 272 F.3d at 1036.

# GIBSON DUNN

The Surgeon General has described "point of sale displays" as a core form of "promotional" activity. Indeed, the Eighth Circuit quoted the Surgeon General's analysis that: "Promotional activities can take many forms. Promotional expenditures can stimulate retailers to place and display products in ways that will maximize the opportunity for purchase (e.g., supplying retailers with point-of-purchase displays to locate products at checkout stands)." *Jones*, 272 F.3d at 1035 (quoting *Preventing Tobacco Use Among Young People: A Report of the Surgeon General* 159–60 (1994)); *see also A Report of the Surgeon General* at 8 ("Barred since 1971 from using broadcast media, the tobacco industry increasingly relies on promotional activities, including sponsorship of sports events and public entertainment, outdoor billboards, point-of-purchase displays, and the distribution of specialty items that appeal to the young."); *id* at 159 ("'[A]dvertising' refers to company-funded advertisements that appear in paid media (e.g., broadcasts, magazines, newspapers, outdoor advertising, and transit advertising), whereas 'promotion' includes all company-supported nonmedia activity (e.g., direct-mail promotions, allowances, coupons, premiums, point-of-purchase displays, and entertainment sponsorships)").

Indeed, the City itself recognizes that in-store displays are a form of promotion of cigarettes. *See* Defendants' Reply Memorandum of Law in Further Support of Defendants' Cross-Motion for Summary Judgment [Doc. 56] at 15–16 (noting amount supposedly spent by tobacco manufacturers on point-of-sale promotional materials and claiming studies show that "tobacco product displays stimulate impulse purchases"); Defendants' Memorandum of Law in Opposition [Doc. 47] at 7 (claiming that "it is clear from the pictures . . . that plaintiffs . . . continue to facilitate Big Tobacco's aggressive promotion and sale of tobacco products," including "multiple cigarette advertisements," "a large cigarette display stand," and "a similar cigarette display").

Despite this recognition, the City has argued that the Resolution is saved from preemption because the Resolution's text does not include the exact terms "advertising" or "promotion" and does not explicitly attach a regulatory requirement to advertising or promotion activity. The City would have the Court ignore evidence that, as a practical matter, advertising and promotion occur at the point of sale, that the City's signs are themselves a form of advertising, and that the purpose of the Resolution is to "[c]ounteract" the advertising of cigarettes. Plaintiffs disagree with the City's confined reading of the meaning of "with respect to advertising or promotion." *See* Reply Brief at 4–11. Nevertheless, the Resolution violates even the City's narrow and flawed interpretation of the Labeling Act. By mandating the posting of an additional health warning "at each location where tobacco products are displayed," the Resolution's text expressly references a promotional activity—the display of cigarettes—and is thus "with respect to the . . . promotion of . . . cigarettes."

# GIBSON DUNN

For the foregoing reasons, and the reasons previously set forth, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for a Preliminary Injunction and deny Defendants' Cross-Motion for Summary Judgment.

Respectfully,

*/s/ Miguel A. Estrada*

Miguel A. Estrada

cc: All Counsel of Record.