

MICHAEL A. CARDOZO
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

Nicholas R. Ciappetta
Administrative Law Division
212-788-0708
Facsimile: (212) 791-9714
nciappet@law.nyc.gov

November 3, 2010

**BY HAND DELIVERY AND ECF**

Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: 23-34 94th St. Grocery Corp., et al. v. New York City Board of Health, et al.,
     10 CV 4392 (JSR)(FM)

Dear Judge Rakoff:

   Plaintiffs' argument as to why the Resolution is preempted under 15 U.S.C. § 1334(b) is a moving target. Initially, plaintiffs exclusively relied upon the Second Circuit's decision in Vango Media, Inc. v. City of New York, 34 F.3d 68 (2d Cir. 1994) to establish that the Resolution is a requirement "with respect to" the advertising of cigarettes. After defendants successfully distinguished Vango Media by arguing that there is no nexus between the Resolution and advertising, plaintiffs shifted their focus to Altria Group, Inc. v. Good, 129 S. Ct. 538 (2008).[1] In addition, plaintiffs now assert that the Resolution is also "with respect to" the promotion of cigarettes. For the reasons that follow, these arguments are no more persuasive than their reliance upon Vango Media.

   Plaintiffs cite to dicta in Altria – a case involving a completely different set of facts, that ultimately did not result in preemption – to support their assertion that the Federal Cigarette Labeling and Advertising Act ("FCLAA") preempts any additional requirement on the

---

[1] As previously stated numerous times before, the Resolution, unlike the Local Law struck down in Vango Media, does not establish preconditions on the decision to advertise. The instant case and Vango Media would only be similar if the Resolution conditioned the ability to advertise tobacco products on compliance with the requirement to display the signage.

part of tobacco manufacturers to communicate with the public about smoking and health. In response to a nearly identical argument, the First Circuit expressed their skepticism that "FCLAA prescribes the exclusive means by which [manufacturers] may be compelled to communicate health information directly to the public." Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 75 (1st Cir. 1997).[2] In any event, this argument conveniently overlooks a critical – and indeed dispositive – fact, namely that the Resolution does not require tobacco manufacturers, or anyone else for that matter, to communicate with the public. Rather, it is the City of New York that is communicating with consumers about smoking and health; the only requirement is that retailers display the City's message. Moreover, since tobacco manufacturers are not required to use advertising channels to convey information, Congress's concern about the potential for nonuniform, confusing regulations that may impede interstate commerce is not implicated by the Resolution. A regulation such as this that applies solely to local retailers has no impact on interstate commerce, even if similar requirements were adopted in other jurisdictions.

Plaintiffs' claim that the Resolution is a requirement "with respect to" the promotion of cigarettes fares no better than their argument that the Resolution is "with respect to" advertising. Pursuant to the Resolution, tobacco retailers must display either one "small" sign on or within three inches of each cash register or place where payment may be made or one "large sign" at each location where tobacco products are displayed. Plaintiffs' "promotion" argument does not challenge the display of the "small sign." Nor could they. Since the "small sign" must be located near the cash register, it is completely removed from any tobacco product displays.[3]

The preemption provision contains the following three component elements: (1) requirement or prohibition; (2) based on smoking and health; and (3) with respect to advertising or promotion. Plaintiffs fail to satisfy the first prong as the Resolution does not constitute a requirement concerning the display of the "large" sign. Simply stated, the Resolution gives tobacco retailers the option of displaying either a "small" sign or a "large" sign. As it is optional to display the "large" sign, common sense dictates that the posting of the "large" sign is not required. This alone is sufficient to defeat plaintiffs' "promotion" argument.

Secondly, regarding the third element, defendants dispute that the Resolution concerns "promotion." Plaintiffs rely upon the Eight Circuit's decision in Jones v. Vilsack, 272

---

[2] Plaintiffs' argument obfuscates the reality that the Resolution regulates retailers, not manufacturers. Plaintiffs offer no legal authority to support the extension of FCLAA's preemption clause to those who sell tobacco products at retail. The regulation of retail establishments is inherently a responsibility reserved for local governments.

[3] Even if plaintiffs' "promotion" argument is accepted by the Court, plaintiffs would only be entitled to an injunction with respect to the "large" sign since the Resolution contains an express severability clause. See Health Code § 181.19(f). The inclusion of such a provision is evidence that the Board of Health desired to save valid sections of the Resolution in the event that other portions were voided. See Greater N.Y. Metro Food Council, Inc. v. Giuliani, 195 F.3d 100, 110 (2d Cir. 1999).

F.3d 1030 (8th Cir. 2001) to conclude that the display of cigarettes amounts to "promotion." However, the Eighth Circuit was not asked to decide that particular issue; rather, the only question before the Court was whether the distribution of cigarette samples and free items in exchange for the purchase of tobacco products are promotional activities. In considering this matter, the Court noted that FCLAA does not define "promotion," and therefore, sought guidance from how the term is used in other contexts. One such source, the Surgeon General's 1994 report, Preventing Tobacco Use Amongst Young People, contains the sole reference in the decision to point-of-purchase displays. The Court itself cautioned against over-reliance upon its analysis:

> Our obligation to ascertain the plain meaning of "promotion" does not require us to establish an all-purpose definition capable of deciding each and every § 1334(b) preemption dispute that might arise....Our task is simply to discern whether the particular conduct proscribed by the Control Act naturally falls within the range of meaning ordinarily attributed to the term "promotion."

Id. at 1035.

When read in its entirety, it is clear that promotional activities are those that "add extra value to the consumers' underlying purchase." Id. at 1037. The Court stated that such a definition is closely aligned with Congress's intent. See id. at 1036. A point-of-purchase display adds absolutely no extra value to the decision to purchase a tobacco product. The consumer is getting neither a discount on the purchase price nor anything free – merchandise, samples – as a result of the purchase. Plaintiffs' argument creates an unduly expansive definition of promotion, essentially equating promotion with sale. A point-of-purchase display is simply another means of housing a product. According to plaintiffs' reasoning, simply displaying a product for sale on shelving would constitute promotion.

Finally, even if tobacco product displays are considered promotional activity, the Resolution is not "with respect to" the promotion of cigarettes. The Resolution in no way restricts or prohibits promotional activity, as did the statutes invalidated in Jones and R.J. Reynolds Tobacco Co. v. Seattle-King Co. Dep't of Health, 473 F. Supp. 2d 1105, 1197 (W.D. Wa. 2007). For example, the Resolution does not ban tobacco product displays or prescribe where they may be located. Nor is the applicability of the statute triggered by promotional activity. As previously stated, the decision to sell tobacco products, not promote or advertise cigarettes, mandates compliance with the Resolution. In other words, the Resolution does not condition the ability to engage in promotional activity on satisfying the signage requirement. Plaintiffs do not cite to a single case finding a regulation preempted in the absence of either an outright ban or prohibition on advertising/promotion or the imposition of an obligation because of the decision to advertise/promote.

Once again, plaintiffs' preemption argument is based on the mistaken assumption that competing messages at the point-of-sale are preempted. This expansive interpretation of the preemption provision is not supported by the text of the statute and is contrary to the general presumption against preemption that applies to state regulation concerning matters of health and safety. If Congress's intent was to prevent States from adopting any point-of-sale warning

3

statements, it could have easily done so. Indeed, in other contexts, Congress has expressed such an intention by defining the term "labeling" broadly to include all matter "accompanying" an article or product. See e.g,. Federal Meat Inspection Act ("FIMA"), 21 U.S.C. § 601(p). It has been held that point-of-sale warnings constitute "labeling" under this definition, and thus are preempted under FIMA. See American Meat Inst. v. Leeman, 102 Cal. Rptr. 3d 759, 785 (Cal. Ct. App. 2009). In contrast, here Congress did not include such a definition of labeling in FCLAA, and focused instead on advertising, which clearly does not include point-of-sale warnings. Thus, it is apparent that Congress was concerned with requirements that would give rise to additional or different statements on the package of the cigarettes or advertisements for cigarettes, and not additional or different statements at the point of sale.

      For these additional reasons, plaintiffs' motion for a preliminary injunction should be denied and defendants are entitled to summary judgment.

      Respectfully submitted,

*N. Ciappetta*

Nicholas Ciappetta (NC 1014)