UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

23-34 94th ST. GROCERY CORP., KISSENA BLVD. CONVENIENCE STORE, INC., NEW YORK ASSOCIATION OF CONVENIENCE STORES, NEW YORK STATE ASSOCIATION OF SERVICE STATIONS AND REPAIRS SHOPS INC., LORILLARD TOBACCO COMPANY, PHILLIP MORRIS USA INC., and R. J. REYNOLDS TOBACCO CO., INC.,

                              Plaintiffs,

- against -

NEW YORK CITY BOARD OF HEALTH, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, NEW YORK CITY DEPARTMENT OF CONSUMER AFFAIRS, DR. THOMAS FARLEY, in his official capacity as Commissioner of the New York City Department of Health and Mental Hygiene, and JONATHAN MINTZ, in his official capacity as Commissioner of the New York City Department of Consumer Affairs,

                              Defendants.

------------------------------------------------------------------------x

**NOTICE OF APPEAL**

10 Civ. 4392 (JRS)



**PLEASE TAKE NOTICE** that defendants hereby appeal to the United States Court of Appeals for the Second Circuit, from the judgment (one paper) of the Honorable Jed S. Rakoff herein dated December 31, 2010, and entered in the docket on or about the same date. This appeal is taken from each and every part of said judgment (one paper) as well as from the whole thereof.

Dated:      New York, New York
             January 4, 2011

                                            MICHAEL A. CARDOZO
                                            Corporation Counsel of the
                                              City of New York
                                            Attorney for Defendants
                                            100 Church Street
                                            New York, New York 10007
                                            (212) 788-1010

                              By:       _____
                                            LEONARD KOERNER
                                            Chief, Appeals Division

TO:  CAHILL GORDON & REINDEL LLP
Floyd Abrams
Joel Kurtzberg
Kayvan Sadeghi
Attorneys for Plaintiffs 23-34 94th Street Grocery Stores, Inc., Kissena Blvd., Convenience Store, Inc., New York Association of Convenience Stores, and New York State Association of Service Stations and Repair Shops, Inc.
80 Pine Street
New York, New York 10005
(212) 701-3120

GIBSON, DUNN & CRUTCHER LLP,
Miguel A. Estrada
Michael J. Edney
Brian D. Boone
Attorneys for Plaintiff Phillip Morris USA Inc.
1050 Connecticut Avenue, N.W. 3rd Fl
Washington, D.C. 20036-5306
(202) 955-8500

GIBSON, DUNN & CRUTCHER LLP,
Jennifer H. Rearden
Attorneys for Plaintiff Phillip Morris USA Inc.
200 Park Avenue
New York, New York 10166
(212) 351-4000

JONES DAY
Noel J. Francisco
Attorney for Plaintiff R. J. Reynolds Tobacco Co.
51 Louisiana Avenue, NW
Washington, D.C. 20001-2113
(202) 879-3939

JONES DAY
D. Theodore Rave
Attorney for Plaintiff R. J. Reynolds Tobacco Co.
222 East 41st Street
New York, New York 10017
(212) 326-3939

GREENBERG, TRAURIG, LLP
Alan Mansfield
Stephen L. Saxl
Attorneys for Plaintiff Lorillard Tobacco Company
200 Park Avenue, 15th Fl
New York, New York 10166
(212) 801-9200

CLERK
Southern District

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/31/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
23-34 94TH ST. GROCERY CORP., et al.,

                Plaintiffs,

-against-

NEW YORK CITY BOARD OF HEALTH, et al.,
                Defendants.
------------------------------------------------------X

10 CIVIL 4392 (JSR)

**JUDGMENT**

Both sides having moved for summary judgment, and the matter having come before the Honorable Jed S. Rakoff, United States District Judge, and the Court, on December 29, 2010, having rendered its Opinion and Order granting plaintiffs' motion for summary judgment, denying defendants' motion for summary judgment, declaring Article 181.19 null and void, and directing the Clerk of the Court to enter final judgment, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Opinion and Order dated December 29, 2010, plaintiffs' motion for summary judgment is granted; defendants' motion for summary judgment is denied; and the Court declares Article 181.19 null and void.

Dated: New York, New York
       December 31, 2010

                                        RUBY J. KRAJICK
                                        Clerk of Court

BY: _____
                          Deputy Clerk

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON _____

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
23-34 94TH ST. GROCERY CORP., KISSENA  :
BLVD. CONVENIENCE STORE, INC., NEW     :
YORK ASSOCIATION OF CONVENIENCE        :
STORES, NEW YORK STATE ASSOCIATION     :
OF SERVICE STATIONS AND REPAIR SHOPS,  :
INC., LORILLARD TOBACCO COMPANY,       :
PHILIP MORRIS USA INC., and R.J.       :
REYNOLDS TOBACCO CO., INC.,            :
                                       :
                 Plaintiffs,           :
                                       :
            -v-                        :   10 Civ. 4392 (JSR)
                                       :
NEW YORK CITY BOARD OF HEALTH, NEW     :   OPINION AND ORDER
YORK CITY DEPARTMENT OF HEALTH AND     :
MENTAL HYGIENE, NEW YORK CITY          :
DEPARTMENT OF CONSUMER AFFAIRS,        :
DR. THOMAS FARLEY, in his official     :
capacity as Commissioner of the New    :
York City Department of Health and     :
Mental Hygiene, and JONATHAN           :
MINTZ, in his official capacity as     :
Commissioner of the New York City      :
Department of Consumer Affairs,        :
                                       :
                 Defendants.           :
------------------------------------ x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-29-10

JED S. RAKOFF, U.S.D.J.

Even merchants of morbidity are entitled to the full protection of the law, for our sake as well as theirs. Here, as a result, an otherwise laudable New York City health regulation designed to alert cigarette purchasers, at the very point of purchase, to the grave dangers of tobacco use must be declared

1

invalid because it imposes burdens on the promotion of cigarettes that only the federal government may prescribe.

The plaintiffs here are the nation's three largest tobacco manufacturers, joined by two New York City retailers who sell tobacco products and two trade associations representing New York City tobacco retailers. They bring this action to challenge Article 181.19 of the New York City Health Code, issued in the fall of 2009 by the New York City Board of Health, which requires the display of certain "smoking cessation signs" at all places within New York City where tobacco products are sold. Defendants are the New York City Board of Health and various other New York City administrative agencies, as well as their respective Commissioners sued in their official capacities (collectively, the "City").

Shortly after the commencement of this lawsuit, the parties voluntarily agreed to stay enforcement of Article 181.19 until January 1, 2011. Both sides then moved for summary judgment. The Court received extensive written submissions in connection with these motions, including an amici curiae brief submitted by a large number of non-profit health organizations.[1] The Court heard

---

[1] The amici include the American Academy of Pediatrics, American Cancer Society, ACS Cancer Action Network, American College of Preventive Medicine, American Legacy Foundation, American Lung Association, American Lung Association in New York, American Medical Association, American Public Health Association,

2

oral argument on October 20, 2010, followed by still further briefing. Having carefully considered these submissions, the Court hereby grants plaintiffs' motion for summary judgment, denies defendants' cross-motion, and declares Article 181.19 null and void.

The facts pertinent to plaintiffs' motion, taken most favorably to the defendants, are as follows:

Smoking is the leading cause of preventable death in both the United States and New York City. Declaration of Thomas A. Farley, dated August 13, 2010, ¶ 4. Approximately one-third of smokers die of tobacco-related diseases and about 440,000 people in the United States die prematurely from smoking every year. Id. Within New York City, roughly 7,500 people die from smoking annually - more than from AIDS, homicide, and suicide combined. Id. at ¶¶ 4-5. An additional 8.6 million people across the nation live with a serious smoking-related illness. Id. at ¶ 5. Despite these facts, an estimated 46 million Americans and nearly 1

---

Asian Pacific Partners for Empowerment, Advocacy, and Leadership, Campaign for Tobacco-Free Kids, Citizens' Commission to Protect the Truth, Faith United Against Tobacco, Lung Cancer Alliance, Massachusetts Association of Health Boards, Medical Society for the State of New York, National African American Tobacco Prevention Network, National Association of Chronic Disease Directors, National Association of County and City Health Officials, National Association of Local Boards of Health, National Coalition for LGBT Health, National LGBT Tobacco Control Network, Oncology Nursing Society, Partnership for Prevention, and Tobacco Control Legal Consortium.

million residents of New York City smoke. See id. at ¶ 7. In part this reflects the addictive quality of nicotine, but it also reflects choices made in response to competing information.

Responding to the public health threat posed by smoking, the Department of Health launched a multi-faceted program to reduce and prevent smoking in New York City, of which Article 181.9 is one part. See Farley Decl. at ¶ 2-3. Other initiatives included the City's smoking ban in indoor workplaces, increased cigarette taxes, educational campaigns, and promotion of smoking cessation programs. Id. at ¶ 2. These other initiatives appear to have somewhat lowered smoking rates, but hardly to the point of eliminating the threat to public health. Id.

On September 22, 2009, the Board of Health adopted Article 181.9, which requires all "persons who engage in face-to-face sales of tobacco products to consumers in New York City . . . [to] prominently display" either "one 'small sign' on or within 3 inches of each cash register" or "one 'large sign' at each location where tobacco products are displayed." Article 181.19(a)-(b). Each sign must include: (1) "information about tobacco products and the adverse health effects of tobacco use," (2) "a pictorial image illustrating the effects of tobacco use," and (3) "information about how to get help to quit using tobacco." Id. at § 181.19(b)(1). Implementing this mandate, the Department

4

of Health designed three signs for tobacco retailers to display. These signs contain graphic, even gruesome images of a brain damaged by a stroke, a decaying tooth and gums, and a diseased lung, accompanied by corresponding information about the dangers of smoking (e.g., "Smoking Causes Lung Cancer") and the phrase "Quit Smoking Today--For Help, Call 311 Or 1-866-NYQUITS." See Declaration of Jennifer H. Rearden, dated June 25, 2010, Ex. B. The signs also include the seal of the City of New York and the phrase "NYC Health." Id.

Based on the foregoing, plaintiffs seek summary judgment invalidating Article 181.19 on the grounds that it (1) is preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331-1341 (the "Labeling Act"); (2) violates the free speech provisions of the Federal and New York State Constitutions; and (3) exceeds the authority of the Board of Health under the New York State Constitution's separation of powers doctrine. Concluding that Article 181.19 is preempted by the Labeling Act, the Court does not reach the other grounds.

On its face, the Labeling Act, first enacted in 1965 and amended several times since, seeks to balance public and commercial interests by "establish[ing] a comprehensive Federal program to deal with cigarette labeling and advertising," not only so that "the public may be adequately informed about any adverse

health effects of cigarette smoking," but also so that "commerce and the national economy may be (A) protected to the maximum extent . . . and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations." 15 U.S.C § 1331. With regard to the latter goal, the Labeling Act includes a preemption provision, 15 U.S.C. § 1334, that in Subsection (b) provides that "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter."

The City concedes that Article 181.19 is a "requirement . . . based on smoking and health." It disputes, however, that it imposes requirements "with respect to the advertising or promotion" of cigarettes. It notes that both the Supreme Court and the Second Circuit have cautioned that reading the words "with respect to" too broadly could lead to absurd results, such as preempting state laws designed to curb fraud in the advertising or promotion of cigarettes. See Altria Group, Inc., v. Goode, 129 S. Ct. 538 (2008) (holding that state law fraud claims against tobacco manufacturers are not preempted by the Labeling Act); Greater N.Y. Metro. Food Council, Inc. v. Giuliani, 195 F.3d 100, 105-06 (2d Cir. 1999) (noting that, "[r]ead literally, these words

6

could be misunderstood to pre-empt every conceivable obligation having a relationship -- however evanescent -- to the advertising and promotion of cigarettes").

But this does not mean that the words "with respect to" may be read out of the statute altogether, thereby rendering nugatory the entire preemptive policy of Section 1334 of the Labeling Act. Indeed, whereas the original preemption section of the Labeling Act was quite narrow and only forbade states from requiring the addition of other words to cigarette packaging where the packaging clearly conformed to the federal requirements, the 1969 amendments to the Act, by proscribing generally any state requirements "with respect to" both "advertising" and "promotion" of cigarettes, was plainly intended to vastly broaden the scope of the preemption. Vango Media, Inc. v. City of New York, 34 F.3d 68, 73-75 (2d Cir. 1994). Here, plaintiffs contend that Article 181.19, by imposing substantial conditions on the advertising and promotion of cigarettes at the very point of sale, strikes at the heart of that proscription.

Most of the case law on preemption under the Labeling Act relates to cigarette advertising, see, e.g., Lorillard Tobacco v. Reilly, 533 U.S. 525 (2001); Vango Media, supra, and raises interesting issues about the definition of "advertising" as to which the parties here are in sharp disagreement. But the Court

7

need not reach these issues because it concludes that Article 181.19 imposes requirements "with respect to ... the promotion of ... cigarettes" and is therefore preempted.

"Promotion," when used in the commercial sense, encompasses any act, including "publicity or discounting," that "further[s] the ... sale of merchandise." Jones v. Vilsack, 272 F.3d 1030, 1036 (8th Cir. 2001) (quoting Webster's Collegiate Dictionary) (2001); see also Oxford College Dictionary 1092 (2002) (defining promotion as "the publicization of a product ... to increase sales or public awareness"). While the line between promotion and advertising is not always clear, this does not mean that "promotion" as used in Section 1334(b) should be limited, as the City contends, to only those activities "that add extra value to the consumers' underlying purchase," such as "a discount ... [or] free ... samples," Def. Suppl. Mem. at 3. Such a narrow conception of the word "promotion" is contrary not only to its plain meaning, but also to its intended role in the wording of Section 1334(b). For, as the Supreme Court has repeatedly noted, "promotion" was added to Section 1334(b) of the Labeling Act in 1969 (along with "respect to") in order to materially broaden its preemptive scope. See Cipollone v. Liggett Group, Inc., 505 U.S. 504, 520 (1992) (noting that the "plain meaning" of the 1969 amendment to Section 1334(b) of the Labeling Act, which "reaches

beyond statements 'in the advertising' to obligations 'with respect to the advertising or promotion' of cigarettes," greatly widens the Section's preemptive scope.); Lorillard, 533 U.S. at 536 (noting that the 1969 amendment to the Labeling Act "employs far more sweeping language to describe the state action that is pre-empted").

In the context of cigarette distribution in particular, "promotion" is commonly used to refer to point-of purchase displays. Thus, for example, a 1994 Report by the Surgeon General entitled "Preventing Tobacco Use Amongst Young People" distinguishes cigarette advertising from cigarette promotion as follows: "'advertising' refers to company funded advertisements that appear in paid media ... whereas 'promotion' includes all company supported nonmedia activity (e.g., ... point-of-purchase displays)." Surgeon General Report at 159. Similarly, the Federal Trade Commission, in its Cigarette Report for 1999, refers on its very first page to "point-of-sale promotions." FTC Cigarette Report at 1.

The Court concludes that, at least in the circumstances of this case, the display of cigarettes at the point-of-sale constitutes cigarette "promotion" as that term is used in the Labeling Act. Although the City seeks to characterize tobacco displays at the point-of-sale as akin to merely placing "a product

9

for sale on shelving," Def. Suppl. Mem. at 3, this totally ignores the extent to which tobacco manufacturers use the display of tobacco products at retail stores to promote the sale of merchandise. Jones, 272 F.3d at 1036. As noted in the Surgeon General Report, supra, at 8, since tobacco companies have been "[b]arred since 1971 from using broadcast media, the tobacco industry increasingly relies on promotional activities, including ... point-of-purchase displays". Indeed, retail displays at the point-of-sale are presently the "dominant channel" by which tobacco manufacturers promote their products in the United States. See Lisa Henriksen et al., A Longitudinal Study of Exposure to Retail Cigarette Advertising and Smoking Initiation, 126 PEDIATRICS 232, 233 (2010)(noting that point-of-sale promotional expenditures "represent 90% of the tobacco industry's $12.5 billion [U.S.] marketing budget in 2006."). The Court concludes that, by any standard, point-of-sale displays constitute cigarette "promotion" under the Labeling Act.

The question here thus reduces to whether the requirement of Article 181.19 that tobacco retailers post anti-smoking signs either "where tobacco products are displayed" or at the adjoining cash registers, are requirements "with respect to" the promotion of cigarettes and therefore preempted. The Court finds useful here the test developed by the Second Circuit in Vango Media, 34

F.3d 68, at 71-75, which, although dealing with the issue of pre-emption as applied to advertising, seems to this Court to have equal applicability to promotion. Under Vango Media, a local regulation with even an indirect relationship to cigarette advertising (or here, promotion) is nonetheless pre-empted by the Labeling Act if it "imposes conditions" that "substantially impact[]" such advertising (or, here again, promotion). 34 F.3d at 74-75.

Here, the provision of Article 181.19 calling for tobacco retailers to post a large anti-smoking sign wherever "tobacco products are displayed," Article 181.19(c)(2), plainly imposes conditions on the promotion of cigarettes -- indeed, in a far more direct way then the New York City regulation (requiring taxis to display one public health message for every four tobacco advertisements) that was found to be preempted in Vango Media. Although the Article's alternate mechanism for compliance -- posting a sign near the cash register -- does not quite so directly impose a condition on the promotion of cigarettes, a clear nexus still exists, since a confluence of regulatory and commercial factors lead tobacco retailers to display tobacco products near the cash registers at the point-of-sale. This is because, under New York State law, tobacco retailers are required to "store[] ... tobacco products (a) behind a counter in an area

11

accessible only to the personnel of such business, or (b) in a locked container." N.Y. Public Health Law § 1399-cc(7)(2003). To comply with this requirement, tobacco retailers, in the overwhelming majority of instances, display their cigarettes in close proximity to the cash register, since this is an area "behind a counter in an area accessible only to the personnel of such business." See Affidavit of Ralph Bombardiere, dated May 25, 2010, ¶ 6; Affidavit of Manny Infante, dated May 28, 2010, ¶ 6. Indeed, since an acknowledged purpose of Article 181.19 is to counter the effect of cigarette promotion, the very purpose of the Article's requirement of posting an anti-smoking sign near the cash register is an implicit recognition that this is near where the cigarettes are displayed. See Declaration of Kenneth Michael Cummings, dated October 8, 2010, ¶ 16 (noting, on behalf of the City, that the purpose of Article 181.19 is to neutralize the impact of cigarette promotional activity at the point of sale). The Court therefore concludes that the Article's requirements that anti-smoking signs be posted either where tobacco products are displayed or at the (adjoining) cash register in either case imposes conditions on plaintiffs' promotion of tobacco products.

As for the requirement under Vango Media that such conditions "substantially impact[]" the plaintiffs' promotional efforts at the point-of-sale, it is obvious that this is the very

point of Article 181.19, which, as noted, is specifically designed to counter the effect of plaintiffs' point-of-sale promotional displays.

For the foregoing reasons, the Court concludes that Article 181.19 is a requirement with respect to promotion of cigarettes that is forbidden by section 1334(b) of the Labeling Act. Accordingly, the Court hereby grants plaintiffs' motion for summary judgment, denies defendants' motion for summary judgment, and declares Article 181.19 null and void. The Clerk of the Court is directed to enter final judgment forthwith in accordance with this Opinion and to close the documents numbered 22 and 46 on the docket of this case.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated: New York, NY
       December 29, 2010

10 Civ. 4392 (JRS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

23-34 94th ST. GROCERY CORP., KISSENA BLVD. CONVENIENCE STORE, INC., NEW YORK ASSOCIATION OF CONVENIENCE STORES, NEW YORK STATE ASSOCIATION OF SERVICE STATIONS AND REPAIRS SHOPS INC., LORILLARD TOBACCO COMPANY, PHILLIP MORRIS USA INC., and R. J. REYNOLDS TOBACCO CO., INC.,

Plaintiffs,

- against -

NEW YORK CITY BOARD OF HEALTH, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, NEW YORK CITY DEPARTMENT OF CONSUMER AFFAIRS, DR. THOMAS FARLEY, in his official capacity as Commissioner of the New York City Department of Health and Mental Hygiene, and JONATHAN MINTZ, in his official capacity as Commissioner of the New York City Department of Consumer Affairs

Defendants.

### NOTICE OF APPEAL

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*
*Of Counsel: Leonard Koerner*
*Tel: (212) 788-1010*
*Law Manager No. 2010-023238*

*Due and timely service is hereby admitted.*

- *New York, N.Y. .........................................,2011*

*.................................................................... Esq.*

*Attorney for..........................................................*